# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-01874-SCT

*PHILLIP HORNE, ET AL.*

*v.*

*MOBILE AREA WATER & SEWER SYSTEM,*
*BOARD OF WATER & SEWER COMMISSIONERS*
*OF THE CITY OF MOBILE, ALABAMA, AND CITY*
*OF MOBILE, ALABAMA*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/21/2002 |
| TRIAL JUDGE: | HON. DONALD B. PATTERSON |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | BRETT K. WILLIAMS |
| | KEVIN C. BRADLEY |
| | JAMES H. COLMER, SR. |
| | WILLIAM L. DENTON |
| | DAVID ELIAS KIHYET |
| | DAVID O. McCORMICK |
| | PAUL T. BENTON |
| | TANYA L. HASBROUCK |
| | H. R. WILDER |
| ATTORNEYS FOR APPELLEES: | TIMOTHY DALE CRAWLEY |
| | EMILY BURKE RYAN |
| | ALBEN N. HOPKINS |
| | BEAU A. STEWART |
| | JAMES GORDON HOUSE, III |
| NATURE OF THE CASE: | CIVIL - PROPERTY DAMAGE |
| DISPOSITION: | REVERSED AND REMANDED - 07/15/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COBB, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     On August 10, 1999, Phillip Horne and approximately 350 other owners of property in Jackson

County (collectively, Horne) filed this action in the Jackson County Chancery Court, against the Mississippi Power Company[1], Mobile Area Water & Sewer System, Board of Water & Sewer Commissioners of the City of Mobile ( BWSC), the City of Mobile (the City) and John Does A-J. The complaint alleged negligence, strict liability, nuisance, trespass, and outrageous conduct, and in addition, requested injunctive relief. Over the next three years, there were numerous motions, hearings, recusal of three chancellors, removal to federal court and remand back to chancery court, and discovery.

¶2.     On August 20, 2002, the special chancellor granted the motions of the City and BWSC, dismissing Horne's complaint, pursuant to Rule 12(b)(2) of the Mississippi Rules of Civil Procedure, for lack of personal jurisdiction. On November 11 and 23, 2002, the special chancellor adopted and incorporated his earlier ruling, and found no just reason for delay and directed entry of a final judgment as to BWSC and the City, respectively, pursuant to M.R.C.P. 54(b).

¶3.     Aggrieved by the trial court's dismissal, Horne raises a single issue on appeal: whether the chancellor erred in granting the motions of the City and BWSC to dismiss pursuant to Miss. R. Civ. P. 12(b)(2). Concluding that these entities are subject to the in personam jurisdiction of Mississippi courts pursuant to the Mississippi long-arm statute, we reverse and remand for further proceedings consistent with this opinion.

**FACTS**

¶4.     The Big Creek Lake Reservoir lies east of Jackson County approximately 12 miles across the state

---

[1] As there was no issue as to the chancery court's jurisdiction over Mississippi Power Company, it is not a party to this appeal.

line in Alabama, and water released from it flows into the Escatawpa River which flows through Jackson County. In September of 1998, Hurricane Georges made landfall in the Jackson County, Mississippi, area, bringing with it record amounts of rainfall. Fearing that the water in the Reservoir would escape as a result of the heavy rains, BWSC released a significant amount of water which Horne alleges caused damage and/or destruction to the real and personal property of more than 350 Jackson County property owners.

¶5.     The City of Mobile, Alabama, is a municipal corporation organized and existing under the laws of the State of Alabama. According to the affidavit of the BWSC Director, the City did not own or operate the Reservoir or the dam at any time relevant to this litigation. Further, according to Stevens's deposition, the City of Mobile is a separate legal entity from the BWSC.

¶6.     The Board of Water & Sewer Commissioners of the City of Mobile is a legal entity authorized by the laws of Alabama and created by the City of Mobile. The City contends that BWSC is a separate governmental entity; that is, BWSC is not an agent of the City of Mobile.

## STANDARD OF REVIEW

¶7.     We review jurisdictional issues de novo. *Rayner v. Raytheon Co.*, 858 So.2d 132, 133 (Miss. 2003). When considering jurisdictional issues, the Court sits in the same position as the trial court, "with all facts as set out in the pleadings or exhibits, and may reverse regardless of whether the error is manifest." *Id.*

¶8.     However, as the parties note, the learned chancellor referred to matters outside the pleadings in ruling on the Rule 12(b)(2) motion. Horne argues that the motion was, therefore, converted to one for summary judgment and the defendants are entitled to dismissal only if there exists no issue of material fact.

3

In response, BWSC argues that the issues of fact in dispute here are not material. The City asserts that where a court considers jurisdictional matters outside the pleadings in considering a Rule 12(b)(2) motion, conversion to a Rule 56 motion does not occur.

¶9.     M.R.C.P. 12(b), referring to the 12(b)(6) defense, states in pertinent part:

> If, **on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted** matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

(emphasis added). We have found no case in which this Court has addressed the issue of whether a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) is also converted to one for summary judgment where the trial court considers matters outside the pleadings.

¶10.    Rule 12(b) of the Mississippi Rules of Civil Procedure is in all relevant aspects very similar to Rule 12(b) of the Federal Rules of Civil Procedure. Applying F.R.C.P. 12(b)(2), the Fifth Circuit has concluded that a motion to dismiss for lack of personal jurisdiction is not converted to a Rule 56 motion when the trial court considers matters outside the pleadings. *Attwell v. LaSalle Nat'l Bank*, 607 F.2d 1157, 1161 (5th Cir. 1979) (citing *Edwards v. Associated Press*, 512 F.2d 258 (5th Cir. 1975); 5 Wright & Miller, Federal Practice & Procedure, Civil § 1351, p. 565). Moreover, a majority of federal courts that have considered this issue apply the same rule. *See Patterson v. F.B.I.*, 893 F.2d 595, 604 (3d Cir. 1990); *Weidner Communications, Inc. v. Faisal*, 859 F.2d 1302, 1306 (7th Cir. 1988); *Visual Sciences, Inc. v. Integrated Communications, Inc.*, 660 F.2d 56, 58 (2d Cir.1981); *Topliff v. Atlas Air, Inc.*, 60 F. Supp. 2d 1175, 1177 (D. Kan. 1999); *Sunwest Silver, Inc. v. Int'l*

*Connection, Inc.*, 4 F. Supp. 2d 1284, 1285 (D.N.M. 1998); *Bensusan Rest. Corp. v. King*, 937 F. Supp. 295, 298 (S.D.N.Y. 1996), *aff'd*, 126 F.3d 25 (2d Cir. 1997); *VDI Tech. v. Price*, 781 F. Supp. 85, 87 (D.N.H. 1991); *Coan v. Bell Atl. Sys. Leasing Int'l, Inc.*, 813 F. Supp. 929, 942 n.18 (D. Conn. 1990); *Ulman v. Boulevard Enters., Inc.*, 638 F. Supp. 813, 814 n.3 (D. Md. 1986); *Mello v. K-Mart Corp.*, 604 F. Supp. 769, 771 n.1 (D. Mass. 1985). The rationale for this majority rule has been stated as follows:

> [I]f the court has no jurisdiction, it has no power to enter a judgment on the merits and must dismiss the action. In addition, a dismissal for want of jurisdiction has no preclusive effect and the same action subsequently may be brought in a court of competent jurisdiction. A summary judgment, on the other hand, is on the merits and purports to have preclusive effect on any later action. The court's role on the two motions also is different. On a motion attacking the court's jurisdiction, the ... judge may resolve disputed jurisdictional-fact issues. On a motion under Rule 56 the judge simply determines whether any issues of material fact exist that require trial.

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure: Civil 3d § 2713, at 239-40 (1998). A minority of federal courts hold that a Rule 12(b)(2) motion is converted to one for summary judgment where the trial court considers matters outside the pleadings. *See Rodriguez v. Fullerton Tires Corp.*, 115 F.3d 81, 83 (1st Cir. 1997); *Matosantos Commercial Corp. v. Applebee's Int'l, Inc.*, 64 F. Supp. 2d 1105 (D. Kan. 1999), *aff'd*, 245 F.3d 1203 (10th Cir. 2001); *Woods v. Bentsen*, 889 F. Supp. 179 (E.D. Pa. 1995).

¶11. We find that the majority position is the better rule. Thus, the summary judgment standard of review should not be applied in this case. First, the language of M.R.C.P. 12(b) is explicit. The rule provides for conversion to a motion for summary judgment **only** where a party makes a 12(b)(6) motion and the trial court considers matters outside the pleadings. That is, the rule does not address 12(b)(2)

motions in this context. Further, the Fifth Circuit and a majority of federal courts that have passed on the issue, applying the very similar federal rule, have adopted this rationale.

**ANALYSIS**

¶12.    Whether a Mississippi court may exercise personal jurisdiction over a nonresident defendant is determined through the application of a two-tiered analytical framework. Two distinct questions must be addressed. The first question is whether the defendant is amenable to suit here by virtue of the Mississippi long-arm statute, Miss. Code Ann. § 13-3-57 (Rev. 2002). *McDaniel v. Ritter*, 556 So. 2d 303, 307 (Miss. 1989.) This inquiry is governed by Mississippi law. Assuming an affirmative answer, the second question is whether the defendant is amenable to suit in Mississippi consistent with the due process clauses of the federal constitution, and, as well, this state's constitution. *Id.* at 308. This inquiry is controlled by federal law.

### a.    Long-arm Statute

¶13.    Horne asserts that the elements of the long-arm statute are satisfied; and therefore, the chancery court had personal jurisdiction. Specifically, Horne asserts that a tort occurs in Mississippi for purposes of the long-arm statute when the injury occurs inside the State but the injury-causing act is committed in another state. The City argues in response that Mississippi's long-arm statute does not confer personal jurisdiction on the chancery court because: (1) the City is not a person, firm or general or limited partnership; and (2) generally, several provisions of Mississippi substantive law distinguish municipalities from corporations. BWSC contends that the long-arm statute does not apply because it has not purposefully availed itself of the benefits and protections of Mississippi law.

¶14.    Mississippi courts may exercise in personam jurisdiction over nonresident defendants pursuant to

6

our long-arm statute. ***McCain Builders, Inc. v. Rescue Rooter, LLC***, 797 So.2d 952, 954 (Miss. 2001). The Mississippi long-arm statute provides:

> Any nonresident **person, firm, general or limited partnership**, or **any foreign or other corporation** not qualified under the Constitution and laws of this state as to doing business herein, who shall make a **contract** with a resident of this state to be performed in whole or in part by any party in this state, **or** who shall commit a **tort** in whole or in part in this state against a resident or nonresident of this state, **or** who shall **do any business or perform any character of work** or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

Miss. Code Ann. § 13-3-57 (Rev. 2002) (emphasis added). There is no evidence or contention that the defendants were doing business or contracting in Mississippi. Thus, Horne's assertions arise under the tort prong of the long-arm statute.

¶15.   "Under now well established law, Mississippi's long-arm statute contains no requirement that the part of the tort which causes the injury be committed in Mississippi." ***Sorrells v. R & R Custom Coach Works, Inc.***, 636 So.2d 668, 672 (Miss. 1994). Rather, for purposes of our long-arm statute, a tort is committed in Mississippi when the injury results in this State. ***Id.*** This is true because an injury is necessary to complete a tort. ***Id.*** Consequently, we find that Horne suffered a tort in Mississippi for purposes of the long-arm statute because the plaintiffs' property was damaged inside the boundaries of this State.

¶16.   Proper classification of the entities involved, for purposes of the long-arm statute, is necessary for determining whether the statute is operable in the case sub judice. Therefore, we consider whether the City and BWSC qualify as "nonresident person[s], firm[s], general or limited partnership[s], or...foreign or other corporation[s] not qualified under the Constitution and laws of this state as to doing business herein." *See* Miss. Code Ann. § 13-3-57; *see also* Miss. Code Ann. § 1-3-39 (Rev. 1998).

7

¶17. The Alabama Supreme Court has stated that the City of Mobile is an "independent municipal corporation." *Vaughan v. Moore*, 379 So.2d 1240, 1240 (Ala. 1979). Moreover, under Alabama law, "[t]he council of any city may, by ordinance, create a board of water and sewer commissioners for such city." Ala. Code § 11-50-341 (Rev. 1992). The Alabama Supreme Court has held that the Mobile Board of Water and Sewer Commissioners is a "separate and distinct corporation from the City of Mobile." *City of Mobile v. Cochran*, 165 So.2d 81, 83 (Ala. 1964). Furthermore, a board of water and sewer commissioners created under Alabama law is "a public agency or instrumentality exercising public and governmental functions to provide for the public health and welfare." Ala. Code § 11-50-343 (Rev. 1992). Thus, the BWSC, while not a municipality like the City of Mobile, is an independent, separate arm or instrumentality of the State of Alabama. Therefore, the City of Mobile and the BWSC are both governmental entities of the State of Alabama.

¶18. This Court has never considered whether the Mississippi long-arm statute applies to governmental entities of sister states. In addition, the statute itself is silent as to its applicability to foreign governmental entities, and Horne fails to discuss how the governmental entities should be categorized for purposes of the long-arm statute.

¶19. In *Church v. Massey*, 697 So. 2d 407, 408-09 (Miss. 1997), this Court considered the only case in which a foreign governmental entity was found to be amenable to suit in this State. There, however, we applied Miss. Code Ann. § 13-3-63 (Rev. 2002), the nonresident motorist statute[2] for jurisdiction, not

---

[2]Miss. Code Ann. § 13-3-63 (Rev. 2002) states in relevant part:

The acceptance by a *nonresident* of the rights and privileges conferred by the provisions of this section, as evidenced by his operating, either in person or by agent or employee, a

8

Miss. Code Ann. § 13-3-57, the long-arm statute. Church filed a personal injury action against Brewer State, an Alabama public educational institution, for injuries arising out of a motor vehicle accident in Mississippi. Church was riding his motorcycle when it collided with the vehicle operated by Massey, an agent of Brewer State. *Id.* at 409. This Court concluded that the trial court erred in finding Alabama law applicable, but did not specifically consider whether the Mississippi long-arm statute applied to the governmental entity at issue in that case. We have found no reported Mississippi decision that specifically construes the first clause of Section 13-3-57 or classifies foreign governmental entities for purposes of the statute. Therefore, we look to other states to see how they have addressed similar issues.

¶20. In *City of Milwaukee v. Illinois*, 451 U.S. 304, 308-09, 101 S. Ct. 1784, 68 L. Ed. 2d 114 (1981), the state sued an out-of-state municipality and its subsidiaries for dumping sewage into water that flowed through the state. The out-of-state municipality and its subsidiaries moved to dismiss the action for lack of jurisdiction. 451 U.S. at 312 n.5. The state's "long-arm" statute provided:

> Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:
> * * *
> The commission of a tortious act within this state.

---

motor vehicle upon any public street, road or highway of this state, or elsewhere in this state, or the operation by a nonresident of a motor vehicle on any public street, road or highway of this state, or elsewhere in this state, other than under this section, shall be deemed equivalent to an appointment by such nonresident of the Secretary of State of the State of Mississippi to be his true and lawful attorney, upon whom may be served all lawful processes or summonses in any action or proceeding against him.

(Emphasis added).

9

110 Ill. Comp. Stat. § 17 (1977). The district court denied the motion to dismiss. 451 U.S. at 312 n. 5. The court of appeals affirmed, as did the United States Supreme Court which held: "[w]e agree that . . . personal jurisdiction was properly exercised." *Id.*

¶21. Both *City of Milwaukee* and the present case involve a municipality's power and authority over its water. *City of Milwaukee* involved polluting water, and the present case involves releasing water. Further, both *City of Milwaukee* and the present case involve the "tort" section of the "long-arm" statute; *City of Milwaukee* involved "[t]he commission of a tortious act within this state" and this case involves "commit[ing] a tort in whole or in part in this state[.]" Significantly, *City of Milwaukee*'s "long-arm" statute is much narrower than Mississippi's — that is, *City of Milwaukee*'s "long-arm" statute gives the state courts power over "any person" while our state's "long-arm" statute gives Mississippi courts broader power over "any person, firm, general or limited partnership, or any foreign or other corporation[.]" Just as jurisdiction was proper in *City of Milwaukee*, it is proper in this case.

### b. Fourteenth Amendment Due Process Analysis

¶22. The chancery court, even though apparently determining that Mississippi's "long-arm" statute gave it jurisdiction over the City and the Board, erroneously concluded that the application of the "long-arm" statute would violate the Fourteenth Amendment's due process clause. In the chancellor's decision on the motions to dismiss, he found that:

> Taken at best plaintiffs' evidence reflects that the Board or the City, or both, own and maintain a reservoir and dam situated wholly in Mobile County, Alabama some 12 miles from Mississippi. One or both of these defendants, at a time of natural flooding released water into an Alabama creek which traversed some 12 miles across Alabama and eventually flowed into the Escatawpa River in Mississippi and added to the flooding caused by Hurricane Georges. By no stretch of the imagination can it be said that these

10

nonresident defendants "purposefully directed their activities at the forum state and this litigation results from the alleged injuries that arise out of or relate to those activities."

¶23.    The due process clause provides: "No State shall . . . deprive any person of life, liberty, or property without due process of law . . . ." U.S. Const. amend. XIV, § 1. The United States Supreme Court has held: "[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945). A defendant has "minimum contacts" with a state if "the defendant has 'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985).


¶24.    Applying this rule, the City and the Board "purposefully directed" their activities toward Mississippi property owners, by opening the spillway to its maximum capacity, as shown by the following deposition testimony of Benny White, a water treatment operator for Mobile Water:

Q.    So you had them -- you had them wide open?
A.    That's correct.
Q.    Couldn't have got any more out of them?
A.    No, sir, not to my knowledge.
Q.    Had you ever opened them like that before, all seven ten [sic] feet?
A.    No.
Q.    Have you ever opened them like that since?
A.    No.

¶25.    There is no question that the City and Board knew the water would flow into Mississippi based on deposition testimony of Les Brown, a licensed professional engineer for the water board who had direct

11

supervisory responsibility for operations and maintenance of the Converse Reservoir and Dam:

> Q. So I assume, unlike the board members I've talked to today, you know and you knew in 1987 that if you opened the gates at the spillway at the Big Creek Reservoir, the water runs down Big Creek and into Mississippi.
>
> A. Yes.

They knew that the water would flood Mississippi based on White's deposition testimony:

> A. [W]hen you opened one gate four feet and above or over four feet, you called [Moss Point, Mississippi and Jackson County, Mississippi].
>
> Q. And why would you call them? . . .
>
>                                   \* \* \*
>
> A. Well, they say we have a -- it's a -- we possibly are attributing to flood or something or other in Moss Point.

Further, this action resulted from the alleged injuries that arose out of the activities. According to the complaint: "This release of water, in either the manner, volume, or at the time released, caused damage and/or destruction to the real and personal property of the Plaintiffs in Jackson County, Mississippi." Therefore, the City and the Board had sufficient "minimum contacts" with Mississippi to warrant application of our long-arm statute.

¶26. In *Medical Assurance Company of Mississippi v. Jackson*, 864 F. Supp. 576, 577 (S.D. Miss. 1994), a Mississippi insurance company sued an Alabama attorney and his Alabama client for breach of a settlement agreement. The attorney and the client moved to dismiss the action for lack of personal jurisdiction. *Id.* at 577. The district court denied the motion. *Id.* at 579-80. After noting that "[a] single act by the defendant directed at the forum state . . . can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted," the federal district court reasoned:

> [D]efendants . . . had sufficient contacts with Mississippi . . . for the court to exercise 'specific jurisdiction.' . . . Jackson, on Moore's behalf and presumably with his authority, initially wrote a letter to MACM in Mississippi to settle a medical malpractice claim . . . .

> . . . Jackson rejected that offer by telephone and made a counter-offer . . . . . . . Jackson telephoned Dunn in Mississippi to accept the offer and thereafter, wrote a letter to Dunn in Mississippi confirming the settlement . . . .

*Id.* at 579.

¶27.    As was true of the comparison of the present case with *City of Milwaukee*, so is there a striking similarity between *Jackson* and the present case.  Both *Jackson* and the present case involve Alabamians; *Jackson* involved an Alabama attorney and his Alabama client and this case involves an Alabama municipality and its Alabama subsidiary.  Also, both *Jackson* and the present case involve defendants who never set foot in Mississippi; *Jackson* involved an attorney and his client negotiating from their out-of-state office and the present case involves a municipality and its subsidiary releasing water from their out-of-state dam.  Significantly, however, in *Jackson*, the defendants' contacts with Mississippi were much less extensive than the City and Board's contacts with Mississippi — that is, *Jackson* involved making two telephone calls and writing two letters while this case involves releasing 18 billion gallons of water.  If *Jackson* had "minimum contacts," then surely the present case has "minium contacts."  Stated another way, if writing two letters and making two telephone calls is "minimum contact," then releasing 18 billion gallons of water is surely a "minimum contact."  Therefore, the City and the Board had "minimum contacts" with Mississippi.

¶28.    Whether maintenance of a suit offends "traditional notions of fair play and substantial justice" depends on: (1) the forum state's interest in adjudicating the dispute; (2) the plaintiff's interests in obtaining convenient and effective relief; (3) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (4) the shared interest of the several states in furthering fundamental social

13

policies. ***Burger King***, 471 U.S. at 477.

¶29. Applying this rule, Mississippi has a strong interest in adjudicating the dispute because Mississippi residents were injured, Mississippi property was destroyed, and the City and the Board continue to release water. Also, the interest of Horne and the hundreds of other Mississippi property owners in obtaining convenient and effective relief is furthered by keeping the suit in Mississippi because their property is located in the county where the suit was filed. Further, the interstate judicial system's interest in obtaining the most efficient resolution of controversies is not harmed by keeping the suit in Mississippi since the City and the Board are only 12 miles from Mississippi. Thus, maintenance of the suit does not offend "traditional notions of fair play and substantial justice," and application of the "long-arm" statute in this case does not violate the United States Constitution.

## CONCLUSION

¶30. The chancery court had personal jurisdiction over the City and the Board under the Mississippi long-arm statute, and the learned chancellor erred in granting the motion to dismiss for lack of personal jurisdiction. We reverse the chancellor's judgment and remand this case for further proceedings consistent with this opinion.

¶31. **REVERSED AND REMANDED.**

**SMITH, C.J., WALLER, P.J., EASLEY, CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ J., NOT PARTICIPATING.**

14