954 So.2d 455 (2006)
Billy ESTES and Phillys Estes, Appellants,
v.
Daniel BRADLEY, Jerome Schmidt and Bonita Schmidt, Appellees.
Jerome Schmidt and Bonita Schmidt, Appellants,
v.
Daniel Bradley, Appellee.
Joe Schicke and Jean Schicke, Appellants,
v.
Jerome Schmidt and Bonita Schmidt, Appellees.
Nos. 2004-CA-02124-COA, 2005-CA-01264-COA.
Court of Appeals of Mississippi.
December 12, 2006.
Rehearing Denied April 24, 2007.
*458 Phil R. Hinton, Corinth, attorney for appellants in No. 2004-CA-02124-COA.
John A. Ferrell, Booneville, Donald Ray Downs, Corinth, William Wayne Smith, Booneville, attorneys for appellees in No. 2004-CA-02124-COA.
Tommy Dexter Cadle, Kenneth Eugene Floyd, attorneys for appellants in No. 2005-CA-01264-COA.
William Wayne Smith, Booneville, attorney for appellees in No. 2005-CA-01264-COA.
Before MYERS, P.J., SOUTHWICK and BARNES, JJ.
SOUTHWICK, J., for the Court.
¶ 1. The suit involves claims arising from defects in the construction of a home. The current owner (the third since construction) sued both of the previous owners as well as the contractor. Cross-claims were then filed. Claims against the original owners were dismissed, and summary judgments were granted the contractor. Other claims remain pending below.
¶ 2. The trial court ruled that the statute of repose applicable to claims regarding construction defects had run and barred claims against the builder and against the original owners. Further, the court found no personal jurisdiction existed for the current and second owners' claims against the original owners, who now reside out-of-state. We disagree with the analysis on *459 the statute of repose and on in personam jurisdiction. We therefore reverse those judgments and remand. However, the original owners' appeal of summary judgment denying their claims against the builder has not been perfected. We dismiss that appeal.

FACTS
¶ 3. Jerome and Bonita Schmidt moved to Corinth, Mississippi in early 1994. The Schmidts purchased a lot in Corinth and contracted with Daniel Bradley to construct a house on the lot. The Schmidts moved into the completed home in the latter part of October 1994. In 1996, the Schmidts discovered that a brick above a window on the north side of the house had become loose. They asked Bradley to repair the problem. In February or December 1996, Bradley went to the Schmidts' home, dug up the foundation, poured concrete and placed concrete piers below the house. Jerome Schmidt claimed that he did not know the specifics of Bradley's work on the home, though he knew the work was related to the loose brick and was for "fortifying" the foundation. Later, Schmidt discovered a crack about one-quarter of an inch in width in the floor of the house's game room. The Schmidts again called Bradley, and Bradley made repairs.
¶ 4. In 1997, the home was sold to Caterpillar, Inc., Jerome Schmidt's employer, and the family moved to Illinois. The Schmidts executed what in essence was a blank warranty deed and special power of attorney naming an agent to execute documents in connection with the eventual sale of the home. This document was dated on October 17, 1997. In 1998, Joe and Jean Schicke purchased the home. Their names were inserted into the warranty deed earlier signed by the Schmidts. The Schickes received a "homeowner's disclosure statement"  executed by the Schmidts on October 9, 1997  in which the Schmidts denied knowledge of any defects in the foundation, slabs, or floors of the house. Caterpillar is not a party in this litigation.
¶ 5. In 2001, Billy Estes contracted to purchase the home from the Schickes. Billy and Phillys Estes are the plaintiffs. Attached to the contract was a "seller's disclosure statement" in which the Schickes asserted that they were unaware of any prior repairs made to the foundation of the home. They also stated that the house's foundation was not in need of repair. The Esteses executed warranty deeds on June 29, 2001. Later, with the aid of engineers, the Esteses discovered a number of defects in the foundation which they allege were known to the Schickes but not disclosed.
¶ 6. The Esteses filed suit on June 27, 2002 naming as defendants their sellers, the Schickes; the original owners, the Schmidts; and the builder, Bradley. The Esteses claimed that the Schickes made fraudulent representations that the house was in good condition, when they knew that there were "material and substantial defects and deficiencies in the foundation." Also claimed was that the Schmidts knew of defects in the house's foundation when they placed the house on the market, and their disclosure statement misrepresented to prospective buyers the condition of the house. The Esteses also alleged that Bradley made repairs in such a way as to hide the flaws in the foundation.
¶ 7. The Schickes (second owners) cross-claimed against their sellers, the Schmidts, for indemnification. The Schmidts made a cross-claim against the builder for indemnification.
¶ 8. The court granted summary judgment or dismissed certain claims, as follows:

*460 (1) On September 17, 2004, summary judgment was granted against the claims by the present owners, the Esteses, against the builder Bradley. No certification of this judgment as final for purposes of appeal was then made, but that certification was entered on September 11, 2006.
(2) On September 17, 2004, an order of dismissal was entered against the claims brought by the second and third owners, the Schickes and the Esteses, against the original owners, the Schmidts. A certification that this judgment should be treated as final was entered as part of the original order.
(3) On December 2, 2004, summary judgment was granted the builder Bradley against the claim brought by the Schmidts, who had contracted with Bradley for the construction of the home. There is a still-pending motion at the trial court for findings on this summary judgment, and there is no Rule 54(b) certification. This judgment is not properly before us.
¶ 9. The Esteses and the Schickes are properly before us on their challenges to the dismissal of their claims against the original owner, the Schmidts. The Esteses also have validly presented their appeal that entering summary judgment on their claims against the builder Bradley was error.

DISCUSSION

I. Dismissal of Estes claim against Schmidt
¶ 10. The Esteses' assert error in the dismissal of the claims against the Schmidts. We will discuss the personal jurisdiction point first and later address the statute of repose.
¶ 11. The Schmidts are now residents of Illinois. They properly raised the absence of personal jurisdiction in their first responsive pleading. M.R.C.P. 12(h)(1). In determining whether one of our state courts may exercise personal jurisdiction over a nonresident defendant, we first examine whether the defendant is amenable to suit by virtue of the Mississippi "long-arm statute." Horne v. Mobile Area Water & Sewer Sys., 897 So.2d 972, 976 (Miss.2004). If the defendant is included within the reach of the statute, we examine whether the grant of personal jurisdiction is consistent with the due process clauses of both the state and federal constitutions. Id.
A.1. Long-arm statute
¶ 12. In the complaint, the Esteses alleged that when "Mr. and Mrs. Schmidt, placed the real estate in question on the market, they executed and delivered to prospective buyers, including the Defendants, Mr. and Mrs. Schicke, a Seller's Disclosure Statement denying knowledge of the defects to the property which were either made by them or with their knowledge." The Schmidts contend that this language does not state a claim by the Esteses against them since it only alleges that the Schmidts made a misrepresentation to their buyers, the Schickes, and not that they made a misrepresentation to the Estes plaintiffs, who were the next buyers.
¶ 13. Measuring whether these assertions are enough under the Mississippi long-arm statute starts with examining the relevant language of the statute:
Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state *461 against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.
Miss.Code Ann. § 13-3-57 (Rev.2002).
¶ 14. Under this statute, a tort is committed in Mississippi if the acts that cause the injury occur in this state, or if the injury itself occurs here. Mobile Area Water & Sewer System, 897 So.2d at 977. The current owners, the Esteses, contend in their first amended complaint that the Schmidts committed the tort of fraudulent or negligent misrepresentation. There is no dispute that all actions that would support the commission of such a tort would have occurred in Mississippi, and the injury arose here too. The objection raised by the Illinois-residing Schmidts, who moved out of state in 1997 even before selling the house, is that the Estes complaint does not allege they misrepresented anything to anyone except to the Schickes. A claim of a tort by the Schmidts against the Esteses is more explicit in an offered second amended complaint, though no ruling on the 2004 motion for leave to file that amendment was ever made because of the judgment dismissing the claim. The second amended complaint alleged that the failure of the Schmidts to make accurate disclosure, and their complicity with the builder Bradley in making hidden repairs that did not cure the defects, meant that "the Schickes and therefore the [Esteses] did not have information which the Schmidts, the Schickes and the realtor had a duty to disclose" when the Esteses bought the property.
¶ 15. The second amended complaint would have fleshed out the claim that misrepresentations by the Schmidts prevented their buyers from being able to reveal the foundation defects when they later sold to the plaintiffs. This in essence is a claim of a continuing or renewed tort arising from the effects of an earlier failure to disclose. There are legal authorities relevant to whether faulty information provided by a party in one transaction can be the basis of liability if relied upon in a later transaction by someone else. E.g., Strickland v. Rossini, 589 So.2d 1268 (Miss.1991); Hosford v. McKissack, 589 So.2d 108 (Miss.1991); RESTATEMENT (2D) OF TORTS 552 (1977). These authorities appear to conclude that a misrepresentation may be the basis for a claim when used in a transaction in which the creator of the information (1) intends it to be used, or (2) knows or should know that the recipient intends it to be used, or (3) it is used in a substantially similar transaction to those described in (1) and (2). RESTATEMENT (2D) OF TORTS § 552, comment j.
¶ 16. We do not decide whether the Esteses' complaint describes a tort by the Schmidts against them. That is because their motion to dismiss was under Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. They did not allege a failure to state a claim under Rule 12(b)(6). Regardless of whether the complaint validly asserted that the Schmidts committed a tort against the plaintiffs, it did assert that the Schmidts committed a tort in Mississippi. Under earlier versions of the long-arm statute, its applicability was limited to "actions or proceedings accrued or accruing from such act or acts, or arising from or growing out of such contract or tort, or as an incident thereto." 1980 Miss.Laws ch. 437, § 1, language deleted in 1991 Miss. Laws ch. 573, § 98, codified Miss. Code Ann. § 13-3-57 (Rev.2002). The removal of the language regarding a nexus between the tort that confers personal jurisdiction and the claim made in the suit makes a nexus unnecessary. Due process *462 still must be satisfied if jurisdiction in this situation is allowed.
¶ 17. Having asserted that the Schmidts committed a Mississippi tort, regardless of whether it was a tort against the Esteses, the complaint sustains personal jurisdiction under the long-arm statute.
A.2. Due process
¶ 18. Since the long-arm statute would allow personal jurisdiction over the claim, we now turn to whether the out-of-state defendant's due process rights would be infringed.
The United States Supreme Court has held: "[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" A defendant has "minimum contacts" with a state if "the defendant has `purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that `arise out of or relate to' those activities."
Horne, 897 So.2d at 979 (internal citations omitted).
¶ 19. The Schmidts do not seriously contest that, at the time the alleged misrepresentation was made, they had substantial contacts with Mississippi. The Schmidts lived in Mississippi for several years, owned the house in question, and executed the disclosure statement which is at the heart of the present litigation. In essence, they allege that allowing a claim that they tortiously wronged the Schickes to be the source of personal jurisdiction in a suit against them by the Esteses is contrary to "traditional notions of fair play and substantial justice." We find, though, no unfairness in requiring that the Schmidts respond to the claims of the present homeowner since the Schmidts will need to respond to the second owners' claims involving the same property and the same alleged misconduct.
¶ 20. Personal jurisdiction over the Schmidts exists. We reverse that judgment.
B. Statute of repose
¶ 21. The trial court also based its dismissal of the Esteses' claim against the Schmidts because it was time-barred under the following statute:
No action may be brought to recover damages for injury to property, real or personal, or for an injury to the person, arising out of any deficiency in the design, planning, supervision or observation of construction, or construction of an improvement to real property, and no action may be brought for contribution or indemnity for damages sustained on account of such injury except by prior written agreement providing for such contribution or indemnity, against any person, firm or corporation performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property more than six (6) years after the written acceptance or actual occupancy or use, whichever occurs first, of such improvement by the owner thereof.
Miss.Code Ann. § 15-1-41 (Rev.2003). The Schmidt's argument is that since they supplied their builder Bradley with house plans from a magazine, that they were engaged in "design, planning, supervision or observation of construction, or construction of an improvement to real property" in the present case. To the contrary, the statute protects "parties such as architects, contractors, and engineers who are *463 engaged in the construction business." McIntyre v. Farrel Corp., 680 So.2d 858, 861 (Miss.1996). The Esteses claim that the Schmidts misrepresented the condition of the home, not that they defectively designed it. The misrepresentation claim is not in repose.
¶ 22. Alternatively, the Schmidts argue that this claim should be time-barred pursuant to the general three-year statute of limitations. Miss.Code Ann. § 15-1-49 (Rev.2003). The trial judge never ruled on the basis of this statute, as he instead applied the statute of repose for construction claims. We find potential fact questions of the time when the plaintiff reasonably should be held to have knowledge of the alleged misrepresentation. Owens-Illinois, Inc. v. Edwards, 573 So.2d 704, 709 (Miss.1990). Neither party's brief gives meaningful attention to the issues of the general limitations statute. This statute is appropriately addressed in the first instance below on remand.
C. Conclusion
¶ 23. We find that the trial court erred in dismissing the Esteses' claims against the Schmidts on the grounds raised by this defendant. We reverse and remand this judgment.

II. Summary Judgment for Bradley against Estes
¶ 24. In addition to the grant of judgment to the Schmidts, the trial court also granted summary judgment to the builder Bradley against the claims of the second and of the current owners, the Schickes and the Esteses, respectively. The court applied the statute of repose. Miss.Code Ann. § 15-1-41 (Rev.2003). Bradley as the builder is a proper party at least to raise this statute. In this section of the opinion, we will discuss only the dismissal of the Schicke claims.
¶ 25. There is no doubt that more than six years passed after actual occupancy of this residence before suit was filed. The statute of repose applies even if the claimant had no reason to know of the defect in the structure before the period for suit expired. Reich v. Jesco, Inc., 526 So.2d 550, 552 (Miss.1988). The legal dispute concerns whether the running of the statutory period should nonetheless be stopped because of alleged misrepresentations and concealment. In one case, the issue that fraudulent concealment would toll the running of this statute of repose was not resolved because no authority was cited. Ferrell v. River City Roofing, Inc., 912 So.2d 448, 456 (Miss.2005). The court nonetheless examined whether there was any evidence of such concealment and found none. Id. at 456-57. Still not having any clear authority, we also move on to whether there is any evidence that Bradley concealed something relevant to the claims against him.
¶ 26. Since the trial court granted summary judgment and did not dismiss based on the pleadings, we re-examine the evidence that was presented in the light most favorable to the non-moving party. Baldwin v. Holliman, 913 So.2d 400, 406 (Miss.Ct.App.2005). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." M.R.C.P. 56(c).
¶ 27. There is no evidence that Bradley was involved with the alleged misrepresentations by the Schmidts. Instead, the Esteses argue that Bradley made repairs after construction that attempted to hide a serious foundation problem. Bradley said the work was done in February 1996, while Schmidt's deposition said it may have been in December 1996. The latter date is less than six years prior to the suit. Bradley *464 discussed the 1996 work on the foundation, which included putting down piers and jacking up a part of the house that had sunk. Bradley said that he noticed the hairline cracks in some walls of the house, and made these repairs without telling anyone. Bradley said that the digging to allow the piers was done with a shovel, and then said that a backhoe may also have been used. Some dirt was taken from beneath the footing for the foundation, and the pier was then poured. Other fill was also added. There was also, apparently later, an effort to repair a crack in the slab, which involved pulling up the floor covering and laying a concrete patch.
¶ 28. Bradley's 1996 work has been characterized as negatively as possible, including that he "snuck in there" to make repairs. There is evidence that Bradley initiated repairs in 1996 without first discussing the work with the then-owners, the Schmidts. There is a dispute as to whether the work was done in February or December, so it is possible that suit was brought within six years of the work. The new work would independently be subject to the statute of repose if, among other things, the work was "an amelioration in [the improvement's] condition, amounting to more than mere repairs . . . and intended to enhance its value, beauty or utility. . . ." Ferrell, 912 So.2d at 454 (new roof was an "improvement"). There was not proof sufficient to grant summary judgment that no harm arose solely from the 1996 work, that the work was definitely a repair and not a significant "amelioration," and that the work occurred more than six years before suit.
¶ 29. Of broader significance is the relevance of Bradley's alleged fraudulent concealment of a defect. There was testimony about somewhat secretive actions in 1996 to correct the very problem that underlies the complaints here, namely, a faulty foundation. The argument posed is that the poorly explained repairs constitute evidence of concealment. What we see generically, though, is work done on something that was not to be left exposed, so a necessary covering over of the work occurred. These facts disclose one of the immediate problems with trying to apply concealment tolling to a statute that affects construction work that often is hidden, to the extent that the next part of the construction will hide a flaw. If a contractor is aware during initial construction that there is a large or small defect in the foundation yet proceeds to build the remainder of the structure on top of it, is the statute of repose unusable because of intentional concealment? To open the door to extending the statute of repose due to any evidence of concealment is to eliminate any repose on a large number of construction projects, at least without a trial court's making a quite exhaustive factual inquiry as to a defendant's knowledge and intent.
¶ 30. Certainly the legislature may write a statute that in fact creates only a very limited bar to a construction claim. It might provide that there is no repose relating to any defect recognized by a builder, architect, or other relevant party at the time of construction yet which was allowed to be covered over. Our statute of repose has been interpreted much more broadly.
A statute of limitation is distinguishable from a statute of repose in the sense that the latter "cuts off the right of action after a specified period of time measured from the delivery of a product or the completion of work. [Statutes of repose] do so regardless of the time of the accrual of the cause of action or of notice of the invasion of a legal right." Universal Engineering Corp. v. Perez, 451 So.2d 463, 465 (Fla.1984).
*465 Evans v. Boyle Flying Serv., 680 So.2d 821, 827 (Miss.1996).
¶ 31. The Supreme Court once made some general comments in a statute of repose precedent about concealment but was only describing the plaintiff's arguments without applying them to this statute. The court stated that to prove "fraudulent concealment in this state, there must be shown some act or conduct of an affirmative nature designed to prevent and which does prevent discovery of the claim." Reich, 526 So.2d at 552. The court cited statutory authority:
If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered.
Miss.Code Ann. § 15-1-67 (Rev.2003). This statute tolls the period in which to sue if there is concealment of a "cause of action." Inconsistently, a statute of repose will bar a claim for defects even if they are unknown during the time period that the statute is running. Smith v. Fluor Corp., 514 So.2d 1227, 1231-32 (Miss.1987). The statute is like a warranty, which expires even if there is a yet-undiscovered problem. Reich, 526 So.2d at 552. Section 15-1-67 says that the cause of action accrues on the date that the effect of the concealment ends. The statute of repose operates independently of causes of action and by its nature bars hidden claims. Accruals of causes of action are irrelevant to its operation. Thus, the concealment statute will not affect the statute of repose.
¶ 32. As to any defects arising from the initial construction, the statute of repose bars claims against Bradley. We find the evidence to be unclear, though, as to whether some defects may have arisen due to the 1996 work, and that the six-year statute of repose might not bar such claims. We therefore reverse the summary judgments granted Bradley to the extent that the Schickes or Esteses present evidence that some independent injury arose strictly due to the work done within six years of suit being filed, and remand for further proceedings.

III. Summary Judgment for the Schmidts against the Schickes
¶ 33. In the same September 17, 2004 order that granted the Schmidts judgment against the current owners of the house, the Esteses, the court granted judgment for the Schmidts against the second owners, the Schickes. After the decision, the Schickes filed a motion for the trial judge to make findings to explain his fairly short judgment. The court denied that motion on May 26, 2005. It was only after that denial that the Schickes filed their notice of appeal. We have entered an order consolidating the Schickes later-filed appeal with the earlier appeals by the Esteses and the Schmidts.
A. Refusal to make detailed findings of fact and conclusions of law
¶ 34. The only issue presented to us by the Schickes is that the trial court erred in refusing to enter more detailed findings of fact and conclusions of law. The Schickes filed a timely motion for fact-findings, had their motion denied, and now argue this refusal constitutes reversible error. The rule relied upon by the Schickes states that in "actions tried upon the facts without a jury the court may, and shall upon request of any party to the suit or when required by these rules, find the facts specially and state separately its conclusions of law" in support of its judgment. M.R.C.P. 52(a).
*466 ¶ 35. We find no authority to make Rule 52(a) applicable to summary judgments or other matters that have not gone to trial. Fact-finding after a bench trial reveals how the evidence was weighed and thereby allows an appellate court to review whether any defect in the evaluation of the evidence exists. In the de novo review applicable to appeals from summary judgment or dismissals on jurisdictional grounds, there is no discretionary fact-finding. Indeed, if on consideration of a motion for summary judgment it is determined that there are facts to be tried, the motion must be denied. M.R.C.P. 56(c).
¶ 36. Having neither been cited to any contrary authority nor finding any, we conclude that Rule 52 applies only to decisions made after some proceeding in which contested facts need to be evaluated. It does not apply to a summary judgment. The applicability of Rule 52 is the premise for the only argument made by the Schickes on appeal. We find no reversible error in the refusal to enter further findings than those that appeared in the initial order on summary judgment.
¶ 37. The Schicke appeal concerns the judgment in their cross-claim for indemnity against the Schmidts. The trial court disposed of the claims of both the Esteses and the Schickes against the Schmidts in the same order of September 17, 2004. We have reversed the part of the judgment affecting the Esteses, finding the later buyers properly asserted personal jurisdiction because of the alleged tort committed by the Schmidts against the Schickes. Even more clearly, the Schickes may use the claimed misrepresentation made to them as a basis for personal jurisdiction in their suit against the Schmidts. The Schickes initially seek a better understanding of the trial court's reasoning so that, as the Schicke brief states, a more effective challenge could then be made to the dismissal. The Schickes were not knowingly forfeiting their right to challenge what occurred.
¶ 38. We find it an overly artificial result to affirm the judgment against the Schickes because of a shortcoming in their statement of the appellate issues after we have found that there was personal jurisdiction for other parties' claims due to the alleged tort against the Schickes. This court has the right when an issue has not been identified in an appellant's brief, to "notice a plain error not identified or distinctly specified." M.R.A.P. 28(a)(3). In the unusual posture of the Schicke appeal, we conclude that we should exercise our discretion under this rule. We will analyze the two grounds used by the trial court to dismiss the Schickes' claims and determine whether to reverse.
B. Personal jurisdiction
¶ 39. The trial court concluded that there was no personal jurisdiction for the claims of either the Esteses or the Schickes against the non-resident Schmidts. As we discussed earlier, a resolution of this personal jurisdiction issue requires consideration of whether the long-arm statute would allow the claim because the defendant committed a tort in the state against a resident, and then whether due process rights are violated by allowing suit here. Horne, 897 So.2d at 976.
¶ 40. We have already discussed these issues when we reviewed personal jurisdiction for the claims of the Esteses against the Schmidts. The long-arm statute will also allow the Schickes' claim that the Schmidts made misrepresentations in a transaction with them, even though the indemnity claim is contingent on the Schickes' first being found liable to another party.
*467 ¶ 41. Even though the long-arm statute would allow personal jurisdiction over the claim, the out-of-state defendant's due process rights must not be infringed. As with the claims by the Esteses, we find no offense to "traditional notions of fair play and substantial justice" by allowing this claim. See Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).
¶ 42. There is personal jurisdiction over the Schickes' claim against the Schmidts.
C. Application of statute of repose to the Schickes' claim against the Schmidts
¶ 43. The trial court also dismissed the Schickes' claim against the Schmidts because it was barred under the statute of repose. For the same reason that we rejected this ground for dismissal of the claim made by the Esteses against the Schmidts, we conclude that the Schickes' claims against the Schmidts should not have been dismissed. The statute of repose sets a definite time period starting with completion of a real property improvement in which to complain of defects. Those protected by that statute are those who have been responsible for the "design, planning, supervision or observation of construction, or construction" of the improvement. Miss.Code Ann. § 15-1-41. We also do not analyze the general three-year statute of limitations since there was no appreciable factual presentation and no ruling on that statute below. Miss.Code Ann. § 15-1-49 (Rev.2003).
D. Conclusion
¶ 44. We find plain error in the trial court's reliance on an absence of personal jurisdiction and the statute of repose to dismiss the Schickes' claims against the Schmidts. We reverse and remand.

IV. Summary Judgment for Bradley against the Schmidts
¶ 45. The Schmidts also have filed an appeal to contest the dismissal of their claims based on the statute of repose against the builder Bradley. Summary judgment was granted Bradley on the Schmidts' claims on December 2, 2004. On December 13, 2004, the Schmidts moved for findings of fact on this order. On the same day, the Schmidts also filed a notice of appeal. After we had evaluated some of the procedural issues raised by the appeals, we entered an order on June 30, 2006, pointing out certain defects and requesting supplementation of the appellate record with any orders that resolved certain pending motions. In response, the trial court entered a helpful order which we have already described. That order referred to the judgment dated September 17, 2004, filed on September 23, involving the Estes and Schicke claims against Daniel Bradley. No supplemental order was entered and presented to us involving the later Schmidt judgment of December 2, 2004, against which a motion for findings is still pending, and for which no Rule 54(b) certification has been made. Of some relevance, perhaps, the trial court on September 11, 2006, when it referred to the judgments filed on September 23, 2004, and dated September 17, said that those judgments were "final and appealable . . . as to the Defendant Daniel Bradley, and as to all claims against him." It appears to us that the parties and trial court were not considering that there was another judgment that also should be mentioned, and the pending motions regarding it should be resolved.
¶ 46. Because the trial court's December 2004 order did not adjudicate all of the claims of all the parties, and did not contain an "expressed determination that there is no just reason for delay," it was *468 purely interlocutory, subject to revision, and is not an appealable judgment. M.R.C.P. 54(b); see Salts v. Gulf Nat. Life Ins. Co., 849 So.2d 848, 850-51 (Miss.2002).
¶ 47. The judgment that resolved the Schmidts' claims against Bradley is not before the court. Since the judgment favoring Bradley over the claims made by the Schmidts is not final, it remains subject to revision at any time before final judgment. M.R.C.P. 54(b). The trial court can consider the proper remedies in light of the remand of the remainder of the suit.
¶ 48. THE JUDGMENTS OF THE CIRCUIT COURT OF ALCORN COUNTY OF SEPTEMBER 17, 2004, DISMISSING THE CLAIMS OF BILLY AND PHILLYS ESTES AGAINST DANIEL BRADLEY, AND DISMISSING THE CLAIMS OF BILLY AND PHILLYS ESTES AGAINST JEROME AND BONITA SCHMIDT, ARE REVERSED AND THE CAUSES ARE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THOSE APPEALS ARE ASSESSED TO THE ESTESES. THE APPEAL OF THE JUDGMENT OF DECEMBER 2, 2004, DISMISSING THE CLAIMS OF JEROME AND BONITA SCHMIDT AGAINST DANIEL BRADLEY IS DISMISSED, AND ALL COSTS OF THAT APPEAL ARE ASSESSED TO THE SCHMIDTS. THE JUDGMENT OF THE CIRCUIT COURT OF ALCORN COUNTY OF MAY 25, 2005, DISMISSING THE CLAIMS OF JOE AND JEAN SCHICKE AGAINST JEROME AND BONITA SCHMIDT, IS REVERSED AND THE CAUSE IS REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THAT APPEAL ARE ASSESSED TO THE SCHMIDTS.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.