# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-IA-01479-SCT

*FRANCESCA MUNNE NORDNESS*

*v.*

*PAIGE FAUCHEUX*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/13/2013 |
| TRIAL JUDGE: | HON. GERALD W. CHATHAM, SR. |
| TRIAL COURT ATTORNEYS: | JOHN THOMAS LAMAR, JR. |
| | M. W. ZUMMACH |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOHN THOMAS LAMAR, JR. |
| ATTORNEYS FOR APPELLEE: | GREGORY C. MORTON |
| | M. W. ZUMMACH |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | REVERSED AND RENDERED - 05/28/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### EN BANC

### DICKINSON, PRESIDING JUSTICE, FOR THE COURT:

¶1.    This is an alienation-of-affections lawsuit brought against a nonresident paramour over whom our courts have personal jurisdiction under the Mississippi long-arm statute. But because the paramour did not make purposeful minimum contacts with Mississippi that were sufficient to satisfy the Due Process Clause of the Fourteenth Amendment, we reverse the circuit court's denial of the paramour's motion to dismiss for lack of personal jurisdiction

and we render judgment dismissing the plaintiff's complaint and this action for lack of personal jurisdiction over the paramour.

## FACTS AND PROCEDURAL HISTORY

¶2. Phillip and Paige Faucheux were a military couple who moved frequently during the early years of their marriage. In early 2002, Phillip got a job as a pilot with FedEx in Memphis, so the couple moved to Southaven, Mississippi—a suburb of Memphis just south of the Tennessee border. Phillip also served as a naval reserve pilot, often training at the Naval Air Station in Belle Chasse, Louisiana. Because of his frequent trips to Louisiana, he kept a Louisiana-registered Mazda pick-up truck parked at the New Orleans airport.[1]

¶3. Paige and the couple's children often accompanied Phillip on his trips, but sometimes they did not. And it was on one such trip to south Louisiana during Carnival Season in January 2004, that Phillip met and began an extramarital affair with Francesca Munne Nordness.

¶4. Phillip and Francesca continued the affair while Phillip trained in south Louisiana. Phillip often would drive Francesca around in his Mazda pick-up truck with Louisiana license plates. Francesca never visited Phillip in Mississippi, and Phillip never told Francesca that he lived in Mississippi. Instead, he misled her into believing he actually lived in Memphis. His cell phone had a "901" area code—the area code for the Memphis area—and he sent her packages with a Memphis return address.

---

[1] Paige claims that Phillip's truck was registered in Mississippi and had a Mississippi license plate, but Francesca's attorney produced definitive evidence from the Mississippi Department of Motor Vehicles showing that neither of the Faucheuxes ever registered a Mazda truck in Mississippi.

2

¶5.    In June 2004, Paige discovered that Phillip was having an affair.  She did not know Francesca's identity, and she made it very clear that she blamed Phillip for the affair. Eventually the couple reconciled their marriage, yet Phillip secretly continued his relationship with Francesca in New Orleans.

¶6.    In October 2004, Francesca moved from New Orleans to Fayetteville, North Carolina, and Phillip stopped seeing her.  But several months later in early 2005, Phillip hopped a FedEx flight to North Carolina and showed up unannounced at the hospital where Francesca worked, professing his love for her and begging her to see him again.  Francesca agreed.

¶7.    From 2005 to 2009, Francesca and Phillip continued to rendezvous at locations across the country, including Louisiana, Florida, North Carolina, Nevada, and Colorado—but never Mississippi.  And although the two exchanged e-mails, phone calls, and text messages, Francesca never knowingly communicated with Phillip while he was in Mississippi.  Phillip also sent Francesca several FedEx packages during this time, but according to Phillip's uncontroverted testimony, he always used a Memphis return address.

¶8.    In December 2009 or early 2010, Paige learned that Phillip was still having affairs, not only with Francesca—whose identity she finally had learned—but also with a fitness instructor in Southaven.  Around that same time, apparently for reasons unrelated to the affair, Francesca and her family left North Carolina and moved to Chattanooga, Tennessee.

¶9.    In March 2010, Francesca emailed Phillip to inform him that Paige had contacted her. Phillip responded by expressing his unflinching love for Francesca, offering to "fly in, hold

your hand[,] and stand next to you while you tell [your husband] the truth," then suggesting that the two of them "fly to MEM, and you can hold my hand while I tell Paige."[2]

¶10.    Phillip's continued infidelity proved too much for Paige and, in August 2010, she was granted an irreconcilable-differences divorce from Phillip.  Following the couple's divorce, Paige—now a resident of Texas—sued Francesca in Mississippi for alienation of affections, intentional and negligent infliction of emotional distress, invasion of privacy, and punitive damages.  Francesca immediately challenged the suit by moving the court to dismiss for lack of personal jurisdiction over her.

¶11.    The circuit judge denied Francesca's motion to dismiss, stating that "it would be fair, just[,] and efficient to exercise personal jurisdiction over [Francesca] in this particular action."  Francesca timely filed a petition for permission to file an interlocutory appeal in this Court, and we granted her petition.

## ANALYSIS

¶12.    Because Paige filed this tort lawsuit against a nonresident, she bears the burden of establishing that Mississippi courts have personal jurisdiction over Francesca.[3]  We first look to the language of Mississippi's "long-arm statute," which allows personal jurisdiction where the nonresident defendant commits a tort, in whole or in part, in Mississippi.[4]  Here, because

---

[2] "MEM" is the International Air Transport Association airport code associated with Memphis International Airport.

[3] *Kevlin Servs., Inc. v. Lexington State Bank*, 46 F.3d 13, 14 (5th Cir. 1995) (per curiam) (citing *Wilson v. Belin*, 20 F.3d 644, 647-48 (5th Cir. 1994)) ("The plaintiff bears the burden of establishing the court's personal jurisdiction over the nonresident defendant.").

[4] Miss. Code Ann. § 13-3-57 (Rev. 2012).

4

Francesca's actions allegedly broke up Paige's Mississippi marriage, we find the long-arm statute's language sufficiently broad enough to bring Francesca within its scope.[5] But the applicability of our long-arm statute does not end the inquiry.[6] We also must determine whether our exercise of personal jurisdiction would be constitutionally permissible under the United States Constitution's Fourteenth Amendment.[7]

> **I.**      **Paige has not established that Francesca made sufficient purposeful minimum contacts with Mississippi for exercising personal jurisdiction over her.**

¶13. The Fourteenth Amendment's Due Process Clause prohibits a state's unrestricted exercise of personal jurisdiction over nonresidents.[8] With respect to the Due Process Clause,

---

[5] *See **Dunn v. Yager***, 58 So. 3d 1171, 1185 (Miss. 2011) (quoting ***Horne v. Mobile Area Water & Sewer Sys.***, 897 So. 2d 972, 977 (Miss. 2004)) ("For purposes of our long-arm statute, a tort is committed in Mississippi when the injury results in this State.").

[6] ***Sorrells v. R&R Custom Coach Works, Inc.***, 636 So. 2d 668, 675 (Miss. 1994) ("The limitations of the Due Process Clause prevented utilization of the Mississippi Long-Arm Statute to gain personal jurisdiction over a defendant foreign corporation that had not purposefully directed its activities towards Mississippi.").

[7] U.S. Const. amend. XIV, § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law . . . ."); s*ee also **Horne***, 897 So. 2d at 976 (citing ***McDaniel v. Ritter***, 556 So. 2d 303, 307 (Miss. 1989)) ("[T]he second question is whether the defendant is amendable to suit in Mississippi consistent with the due process clauses of the federal constitution, and, as well, this state's constitution.").

[8] ***Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee***, 456 U.S. 694, 702, 102 S. Ct. 2099, 2104, 72 L. Ed. 2d 492 (1982).

we are bound by the interpretations and decisions of the United States Supreme Court,[9] which addressed the issue in *International Shoe Co. v. Washington*, by stating:

> [I]n order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."[10]

¶14. So a State's exercise of personal jurisdiction over a nonresident involves an evaluation of a defendant's "minimum contacts within the forum state" to see if they are sufficient to "comport with [traditional notions of] 'fair play and substantial justice.'"[11] To begin that process, we first must determine whether "a defendant *purposefully* established minimum contacts within the forum State."[12]

¶15. Had Paige established that Francesca had engaged in sufficient purposeful minimum contacts with Mississippi, we then would evaluate whether subjecting Francesca to the

---

[9] U.S. Const. art. VI, cl. 2 ("The Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2850, 180 L. Ed. 2d 796 (2011) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945)) ("A state court's assertion of jurisdiction exposes defendants to the State's coercive power, and is therefore subject to review for compatibility with the Fourteenth Amendment's Due Process Clause.").

[10] *Int'l Shoe Co.*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 343, 85 L. Ed. 278 (1940)).

[11] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S. Ct. 2174, 2184, 85 L. Ed. 2d 528 (1985) (quoting *Int'l Shoe Co.*, 326 U.S. at 320).

[12] *Burger King Corp.*, 471 U.S. at 476 (quoting *Int'l Shoe Co.*, 326 U.S. at 320) (emphasis added).

jurisdiction of our courts would comport with the requirements of fair play and substantial justice. But, as explained below, Paige has utterly failed in her burden of showing Francesca had the constitutionally required purposeful minimum contacts in Mississippi, so our courts may not exercise jurisdiction over her, and it is unnecessary for us to analyze the so-called "fairness factors."

¶16. The dissent cites *Burger King Corp.* for the proposition that due process may be satisfied where a defendant purposefully directs activities at a resident of the forum, even though the defendant knows nothing about the person's connections to the forum. We must reject this limited view of *Burger King Corp.*'s holding for several reasons.

¶17. First, the Court in *Burger King Corp.* said more than the dissent discloses. The Court made it abundantly clear that the Due Process Clause allows a state court to exercise personal jurisdiction over a nonresident only where the nonresident should reasonably expect that her actions could lead to her being "haled into court" in that state.[13] Applying that requirement to the case before us today, it seems irrefutably illogical to suppose that a person who has an affair in another State with a Mississippi resident—but who is unaware of the person's Mississippi connections—reasonably could expect her actions could lead to her being "haled into court" in Mississippi. Notably, the dissent does not address this seminal due process

---

[13] *Burger King Corp.*, 471 U.S. at 474 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed. 2d 490 (1980)). *See also Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 871-72 (5th Cir. 2000) (quoting *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 416 (5th Cir. 1993); *World-Wide Volkswagen Corp.*, 444 U.S. at 297) ("Moreover, a defendant's single act can be sufficient to confer personal jurisdiction 'if that act gives rise to the claim being asserted,' so long as the defendant 'reasonably anticipate[s] being haled into court' in the forum state.").

requirement found in ***Burger King Corp.***, ***International Shoe Co., Stripling***, and numerous other cases addressing due process requirements for personal jurisdiction.

¶18.　Second, in ***Walden v. Fiore*** (discussed in detail below)—a case not cited by the dissent, even though it is the United States Supreme Court's most recent pronouncement on specific personal jurisdiction—the Court stated in no uncertain terms that a "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."[14]

¶19.　Third, we have not found, and the dissent has not cited, a single United States Supreme Court case—or, for that matter, any federal or state supreme court case—that has held a person "purposefully established 'minimum contacts' in [a] forum State"[15] where that person did not know, or should not have been aware, he or she was making the contacts in the forum state.

### A.　United States Supreme Court Personal Jurisdiction Cases and the Requirements of Purposeful Minimum Contacts and Foreseeability

¶20.　The United States Supreme Court has addressed the limits of a State court's power to exercise personal jurisdiction over nonresidents in numerous cases, but its opinion in ***International Shoe Co.*** still remains the "canonical opinion."[16]  And its "minimum contacts" requirement has been the object of much elaboration in both federal and state courts.

---

[14] ***Walden v. Fiore***, 134 S. Ct. 1115, 1122, 188 L. Ed. 2d 12 (2014) (citing ***Int'l Shoe Co.***, 326 U.S. at 319).

[15] ***Burger King Corp.***, 471 U.S. at 474.

[16] ***Goodyear Dunlop Tires Operations, S.A.***, 131 S. Ct. at 2853.

¶21.    In *World Wide-Volkswagen Corp. v. Woodson*, the Supreme Court—drawing from and further explaining its pronouncement in *International Shoe Co.*—stated:

> Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment.[17]

¶22.    The Court also pointed out that the foreseeability of suffering injury in the forum state, standing alone, is insufficient to establish constitutionally required minimum contacts:

> It is argued, however that because an automobile is mobile by its very design and purpose it was "foreseeable" that the [plaintiffs'] Audi would cause injury in Oklahoma. *Yet "foreseeability" alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause.*[18]

¶23.    In addressing these and other considerations, the Court stated in *Burger King Corp. v. Rudzewicz* that "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State."[19]  The *Burger King* Court went on to state:

> Although it has been argued that foreseeability of causing *injury* in another state should be sufficient to establish [minimum] contacts there when policy considerations so require, the Court has consistently held that this kind of

---

[17] *World-Wide Volkswagen Corp.*, 444 U.S. at 294 (citing *Hanson v. Denckla*, 357 U.S. 235, 251, 254, 78 S. Ct. 1228, 1238, 1240, 2 L. Ed. 2d 1283 (1958)).

[18] *World-Wide Volkswagen Corp.*, 444 U.S. at 295 (emphasis added).

[19] *Burger King Corp.*, 471 U.S. at 474 (quoting *Int'l Shoe Co.*, 326 U.S. at 316).

foreseeability is not a "sufficient benchmark" for exercising personal jurisdiction.[20]

¶24. Finally, in **Walden v. Fiore**, the United States Supreme Court's most recent pronouncement on specific jurisdiction, the Court made crystal clear that "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."[21]

¶25. The Court noted that "physical entry into the State—either by the defendant in person or through an agent, goods, *mail*, *or some other means*—is certainly a relevant contact," however:

> The inquiry whether a forum state may assert specific jurisdiction over a nonresident defendant "focuses on 'the relationship among the defendant, the forum, and the litigation.'" For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State. Two related aspects of this necessary relationship are relevant to this case.
>
> First, the relationship must arise out of contacts that the "defendant *himself*" creates with the forum State.
> . . . .
> Second, our "minimum contacts" analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.[22]

¶26. The Court went on to explain:

---

[20] **Burger King Corp.**, 471 U.S. at 474 (citing **World-Wide Volkswagen Corp.**, 444 U.S. at 295) (internal footnote omitted).

[21] **Walden**, 134 S. Ct. at 1123 (citing **Rush v. Savchuk**, 444 U.S. 320, 332, 100 S. Ct. 571, 62 L. Ed. 2d 516 (1980)).

[22] **Walden**, 134 S. Ct. at 1121-22 (internal citations and footnotes omitted).

Relying on **Calder** [**v. Jones**, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984)], respondents emphasize that they suffered the "injury" caused by petitioner's allegedly tortious conduct (*i.e.*, the delayed return of their gambling funds) while they were residing in the forum. This emphasis is likewise misplaced. As previously noted, **Calder** made clear that mere injury to a forum resident is not a sufficient connection to the forum. Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.[23]

¶27.   For purposes of a state court's exercise of personal jurisdiction over a nonresident, these cases make clear the Due Process Clause's requirement of evidence that the nonresident *purposefully*—not accidentally or unknowingly—engaged in minimum contacts *within the forum state*, sufficient to submit himself to the personal jurisdiction of that state's courts.

¶28.   The record in this case includes no evidence whatsoever that Francesca ever purposefully made any contact—minimum or otherwise—with Mississippi. She had an affair (never in Mississippi) with a man (a) who worked in Memphis for a Memphis-based corporation; (b) whose cell phone had a Tennessee area code; (c) who sent her packages using a Tennessee return address; (d) who drove a truck with a Louisiana license plate; and (e) who asked her to meet him in "MEM" so they could disclose the affair to his wife.

¶29.   As the Supreme Court has stated numerous times, due process requires that, for a state court to exercise personal jurisdiction over a nonresident, the person reasonably must expect that his or her actions could lead to him or her being "haled into court" in that state.[24] Thus,

_____

[23] *Id.* at 1125 (internal citations omitted).

[24] **Burger King Corp.**, 471 U.S. at 474 (quoting **World-Wide Volkswagen Corp.**, 444 U.S. at 295).

Paige must demonstrate the Due Process Clause's requirement that Francesca "*purposefully established 'minimum contacts*" in Mississippi,[25] and that Francesca should have realized her actions could subject her to the jurisdiction of Mississippi courts. This, Paige has not done.

¶30.    It is uncontroverted that Francesca never knew of Phillip's home in Mississippi. There is no evidence in the record to suggest that Francesca knew or should have realized her calls and texts to Phillip's Tennessee telephone number would be received in Mississippi. And while Francesca certainly should have known her affair with a married man might break up a marriage somewhere, there is nothing in the record to suggest she knew or should have known the marriage would break up in Mississippi.

**B.    Mississippi Personal Jurisdiction Cases in the Context of Alienation-of-Affections Claims**

¶31.    Our review of United States Supreme Court precedent makes it abundantly clear that our courts cannot constitutionally assert personal jurisdiction over Francesca in this case. And our own jurisprudence supports this holding. In every case where Mississippi courts have exercised personal jurisdiction over nonresident paramours, our courts have made it clear that the paramours knew they were engaged in a relationship with a person from Mississippi.

¶32.    In *Knight v. Woodfield*, we held that our courts could exercise personal jurisdiction over a nonresident paramour.[26] But, unlike our case today, the nonresident defendant in

---

[25] ***Burger King Corp.***, 471 U.S. at 474 (citing ***Int'l Shoe Co.***, 326 U.S. at 316).

[26] ***Knight v. Woodfield***, 50 So. 3d 995 (Miss. 2011).

*Knight* was fully aware he was having an extramarital affair with a Mississippi resident whose marital home was in Mississippi.[27] We stated:

> A defendant has "minimum contacts" with a state if "the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities."[28]

We also stated:

> Importantly, Knight [the defendant] knew that Dokka resided with Woodfield in their marital home in Mississippi.[29]

And in another part of the opinion, we stated:

> Knight admitted he was aware that Dakka and Woodfield were married and that Dakka lived with Woodfield in Mississippi.[30]

¶33. Again, there is no evidence whatsoever that Francesca knew Phillip lived in Mississippi, or that he had a marital home in Mississippi. So *Knight* is readily distinguishable from the case before us today.

¶34. Although federal district court opinions do not serve as binding precedent for this Court, we note that both the Northern and Southern Districts of Mississippi also have found that they could exercise personal jurisdiction over nonresident paramours who knew they were having affairs with Mississippians.[31]

---

[27] *Id.* at 997, 1000.

[28] *Id.* at 999 (quoting *Horne*, 897 So. 2d at 979).

[29] *Knight*, 50 So. 3d at 1000.

[30] *Id*. at 997.

[31] *Thomas v. Skrip*, 876 F. Supp. 2d 788, 797 (S.D. Miss. 2012); *Bailey v. Stanford*, No. 3:11-cv-00040-NBB-SSA, 2012 WL 569020 (N.D. Miss. Feb. 21, 2012).

¶35. In ***Thomas v. Skrip***, a federal district court in the Southern District found that the court could constitutionally exercise personal jurisdiction over a nonresident paramour who knowingly made phone calls and sent text messages and emails to a married woman in Mississippi.[32] In analyzing whether the defendant purposefully established minimum contacts with Mississippi, the court observed that "[i]t is undeniably clear from the record evidence that defendant fully *believed* [the wife] when she told him she lived in Mississippi,"[33] and that

> the parts of the emails which have been provided clearly demonstrate that defendant had reason to know, based on information provided by [the wife] in her emails to [the defendant], e.g., regarding her activities on a given day, that she was physically present in Mississippi when at least several of the emails were sent.[34]

Because the defendant knew the wife lived in Mississippi, his emails, calls, and text messages to her in Mississippi created sufficient minimum contacts with Mississippi.[35]

¶36. Likewise, in ***Bailey v. Stanford***, a federal district court in the Northern District found that a nonresident paramour who called and sent text messages to a married man she knew lived in Mississippi created constitutionally sufficient minimum contacts with Mississippi.[36] The district court observed that

---

[32] ***Thomas***, 876 F. Supp. 2d at 797.

[33] ***Id.*** at 796.

[34] ***Id.*** at 796-97.

[35] ***Id.*** at 797.

[36] ***Bailey***, 2012 WL 569020, at *3 ("The defendant's brief concedes that the defendant purposefully directed communications to James in Mississippi . . . .").

14

[i]n alienation of affection[s] cases directed against a nonresident defendant, courts have generally found that the defendant possess[ed] significant minimum contacts with the forum state where the defendant has directed activity toward a state with the intention of alienating the affections of a spouse who lives there.[37]

¶37. The district court then explained why the nonresident defendant possessed significant minimum contacts with Mississippi:

> The court is not persuaded by the defendant's argument that her communications "sent in direct response to communications from James" should not be considered in the court's jurisdictional analysis. This scenario is not the same as the scenario in *Wilson v. Belin*, 20 F.3d 644 (5th Cir. 1994), as the defendant argues. In *Wilson*, the Fifth Circuit found no specific jurisdiction over defendants who sat "unsuspectingly in their respective offices in Indiana and Iowa" and "merely answered one uninitiated and unsolicited phone call." *Id.* at 649. Here, the defendant initiated contacts to Mississippi, and she frequently responded to contacts initiated by James (some of them from Mississippi). The defendant's responses were part of ongoing communication with James and were not "random," "fortuitous," "attenuated," or the result of unilateral activity of a third party. *The defendant knew at the time that she initiated these contacts that James was married to the plaintiff, a Mississippi resident.*[38]

¶38. Both *Thomas* and *Bailey* are readily distinguishable from this case, because there is no evidence that Francesca knew Phillip was from Mississippi or that she knowingly sent communications to him in Mississippi.

¶39. As the Fifth Circuit held in *Stripling v. Jordan Production Co., LLC*, a defendant's single act is sufficient to confer personal jurisdiction "so long as the defendant 'reasonably

---

[37] *Id.* at *6 (citation omitted in original) (quoting David M. Cotter, *The Well-Deserved Erosion of the Tort of Alienation of Affections and the Potential Liability of Nonresident Defendants*, 15 Divorce Litig. 204 (2003)).

[38] *Bailey*, 2012 WL 569020, at *7 (emphasis added).

15

anticipate[s] being haled into court' in the forum state."[39]  So, while we agree that even a

single act can give rise to minimum contacts, the nonresident defendant's act still must be

purposefully directed toward the forum state and the forum state's exercise of jurisdiction

must be reasonably foreseeable.

¶40.    Finally, in *Miller v. Provident Advertising and Marketing, Inc.*, the Mississippi Court

of Appeals found the exercise of personal jurisdiction over a nonresident paramour was

proper because "the alleged sexual activity" took place in Mississippi.[40]  The court stated:

> For whatever reason, Cladakis and Daly chose Mississippi for the site of their
> liaisons, this [c]ourt finds that decision constituted a purposeful availment to
> activities within the State for purposes of personal jurisdiction.[41]

¶41.    In its analysis, the Court of Appeals cited the Fifth Circuit's decision in *McFadin v.*

*Gerber*, where the Fifth Circuit explained its test for specific jurisdiction:

> We have articulated a three-step analysis for specific jurisdiction: "(1) whether
> the defendant has minimum contacts with the forum state, i.e., whether it
> *purposely directed its activities toward the forum state* or purposefully availed
> itself of the privileges of conducting activities there; (2) whether the plaintiff's
> cause of action arises out of or results from the defendant's forum-related
> contacts; and (3) whether the exercise of personal jurisdiction is fair and
> reasonable.[42]

---

[39] *Stripling*, 234 F.3d at 872 (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 297).

[40] *Miller v. Provident Adver. & Mktg., Inc.*, 155 So. 3d 181, 193 (Miss. Ct. App. 2014).

[41] *Id.* at 193.

[42] *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)) (emphasis added).

¶42. The case before us today fails *McFadin*'s first step. There is no evidence in the record whatsoever that Francesca "purposely directed [her] activities toward the forum state [Mississippi]," or that she "purposefully availed [herself] of the privilege of conducting activities" here. Nor is there any evidence in this case that the affair took place in Mississippi.

¶43. The dissent joins Paige in asserting that Francesca's purposeful contact with Phillip—having an affair with him—established the constitutionally required minimum contacts with Mississippi, even though the affair did not take place in Mississippi, and Francesca did not know Phillip was from Mississippi, or that she was having any contact with Mississippi. Neither the dissent nor Paige cites any case to support this view, and it is readily apparent that this view conflicts with the language from the United States Supreme Court's decisions cited above.

¶44. Paige correctly asserts that it is possible for a nonresident to be subject to a court's personal jurisdiction without ever stepping foot in the forum state.[43] But that statement, standing alone, is not sufficient to justify the quantum leap to a finding that a nonresident who was unaware of making any contact with Mississippi is subject to the jurisdiction of our courts. We know of no case that suggests the possibility that a person who is unaware of making any contact with a forum state may nonetheless establish constitutionally required *purposeful*, minimum contacts.

**CONCLUSION**

---

[43] ***Bullion v. Gillespie***, 895 F.2d 213, 216 (5th Cir. 1990) (citing ***Burger King Corp.***, 471 U.S. at 476).

17

¶45. The complete absence of constitutionally required minimum contacts with Mississippi deprives our courts of jurisdiction over Francesca and this case. The record includes no evidence that Francesca created sufficient purposeful minimum contacts with Mississippi by having an affair with a man she did not know lived in Mississippi. Her calls and text messages to Phillip's Memphis telephone number do not establish minimum contacts in Mississippi. A nonresident defendant must *knowingly and purposefully* establish minimum contacts with the forum state—in this case, Mississippi—such that the nonresident reasonably can expect to be haled into court in that state. Here, that did not happen, so we reverse the circuit court's denial of Francesca's motion to dismiss for lack of personal jurisdiction, and we render judgment dismissing Paige's complaint and this action for lack of personal jurisdiction over Francesca.

¶46. **REVERSED AND RENDERED**.

**WALLER, C.J., KITCHENS, CHANDLER, KING AND COLEMAN, JJ., CONCUR. RANDOLPH, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PIERCE, J. LAMAR, J., NOT PARTICIPATING.**

**RANDOLPH, PRESIDING JUSTICE, DISSENTING:**

¶47. Were the contacts between Nordness and Phillip purposeful? Yes. Were Nordness's contacts with a resident of Mississippi? Yes. Did the complaint allege that a tort was committed, in whole or in part, in Mississippi? Yes. Our law requires no more to exercise *in personam* jurisdiction, other than to conduct a due process analysis of fair play and substantial justice. Today's outcome achieves neither.

18

¶48.    A tort is complete when the injury occurs.  Once an injury occurs in this State, ". . .

the tort is committed, at least in part, [] and *[in] personam jurisdiction of the nonresident tort*

*feasor is conferred upon the Mississippi court*." **Internet Doorway, Inc. v. Parks**, 138 F.

Supp. 2d 773, 776 (S.D. Miss. 2001) (quoting **Smith v. Temco**, 252 So. 2d 212, 216 (Miss.

1971)) (emphasis added).

¶49.    Once *in personam* jurisdiction has been established, it must then be determined if the

defendant's due process rights will be violated by continuing in the forum state or if the

proceedings should be conducted elsewhere. In **Knight v. Woodfield**, 50 So. 3d 995 (Miss.

2011), this Court followed the United States Supreme Court's longstanding rule:

> [D]ue process requires only that in order to subject a defendant to a judgment
> in personam, if he be not present within the territory of the forum, he have
> certain minimum contacts with it such that the maintenance of the suit does not
> offend traditional notions of fair play and substantial justice.

**Knight**, 50 So. 3d at 998.  *See also* **Thomas v. Skripp**, 876 F. Supp. 2d 788, 794-95 (S.D.

Miss. 2012).

¶50.    *In personam* jurisdictional inquiries generally focus on the defendant, especially in

cases contesting general jurisdiction. However, in specific jurisdiction, the inquiry is broader.

*See* **Keeton v. Hustler Magazine, Inc.**, 465 U.S. 770, 780, 104 S. Ct. 1473, 1481, 79 L. Ed.

2d 790 (1984) ("Plaintiff's residence may well play an important role in determining the

propriety of entertaining a suit against the defendant in the forum.").

> Due process has been addressed by courts in so many different ways and
> defined in so many situations, it would take a lifetime just to read the cases.
> There is nothing mysterious about the term, however. To most of us its central
> meaning simply is even handed fairness in legal proceedings.

***Mississippi Power Co. v. Goudy***, 459 So. 2d 257, 270-71 (Miss. 1984) (Hawkins, J., specially concurring). Due to the intertwining analysis of the contacts in relation to the claim, the due process examination broadens, not only to the defendant, but to the plaintiff as well, viewing neither in isolation. On one side of the scale is Paige, a resident of Mississippi who was injured in Mississippi. On the other side is Nordness, a nonresident defendant, who claims that she never knew Phillip or his family lived in Mississippi at any time during their six-year affair.

¶51.    I cannot join a decision which denies a Mississippi resident her day in court to seek damages for a tort committed, in whole or in part, in Mississippi. A host of similar cases, specifically alienation-of-affections cases where personal jurisdiction was contested, lead me to this conclusion. This Court repeatedly has permitted such suits to proceed, irrespective of the residency of the parties. *See **Camp v. Roberts***, 462 So. 2d 726 (Miss. 1985) (We held that the trial court had *in personam* jurisdiction over an alienation-of-affections suit filed in Mississippi by a New York resident against a New York/New Jersey resident because the tort allegedly was committed in Mississippi.); ***Knight v. Woodfield***, 50 So. 3d 995 (Miss. 2011) (Mississippi resident filed suit against a Louisana resident in Mississippi, although the sexual relationship occurred in Louisiana. Court held that, because communications through text messages, telephone calls, and emails occurred in Mississippi, and the injury occurred in Mississippi, that the contacts Knight had with Dokka while she was in Mississippi were sufficient to establish minimum contacts.); ***Bailey v. Stanford***, 2012 WL 569020(N.D. Miss. Feb. 21, 2012) (A Mississippi resident sued an Ohio resident in Mississippi for alienation of

20

affections, after the plaintiff's husband had contacted a former girlfriend through email, setting up a tryst in Illinois. The Court found that an exercise of personal jurisdiction over the nonresident defendant was proper.); ***Thomas v. Skripp***, 876 F. Supp. 2d 788, (S.D. Miss. 2012) (Mississippi resident sued his wife's paramour, a Massachusetts resident, for alienation of affections. The court found the requirements for personal jurisdiction were satisfied in Mississippi.); ***Miller v. Provident Advertising and Marketing, Inc.***, 155 So. 3d 181 (Miss. Ct. App. 2014) (A suit was initiated by a resident of Tennessee who alleged an injury to her Tennessee marriage by a resident of Florida because the affair occurred in Mississippi. Our Court of Appeals found that a tort had been committed, "at least in part," in Mississippi, and the minimum-contacts requirements for specific personal jurisdiction were met.).

¶52.    All of these cases held that personal jurisdiction over a nonresident defendant existed by conducting a two-step analysis: (1) whether Mississippi's long-arm statute renders the nonresident defendant amenable to suit in this state (Miss. Code Ann. § 13-3-57 (Rev. 2012)); and if so, (2) whether exercising *in personam* jurisdiction over the nonresident defendant would violate the Due Process Clause of the state and federal constitutions. ***Knight***, 50 So. 3d at 998. It is undisputed that a multi-state, multi-year affair existed between Nordness and Phillip. Paige alleges that the loss of her relationship with Phillip occurred in their home state. She further contends that Phillip's and Nordness's affair led to the demise of their marriage in Mississippi. Thus, the requirements set forth in Mississippi's long-arm statute are satisfied.

¶53.   My reasoning is as follows. First, I discern no error with the trial court's order denying Nordness's Motion to Dismiss. The trial court held that it is "fair, just and efficient to exercise personal jurisdiction over [] Nordness in this particular action." I agree.

¶54.   Second, the majority holds that Nordness's minimum contacts must have been purposeful with Mississippi. However, in cases involving specific jurisdiction, the purposeful minimum contacts are determined by contacts with **residents of the state**, *not the State*. I agree that contacts with the forum, as opposed to with residents of the forum, is the proper concern for claims of systematic and continuous contacts for general jurisdiction, as found in ***International Shoe Company v. Washington***, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945), and the other similar cases cited by the majority. However, this is a case of specific jurisdiction. The United States Supreme Court addressed this distinction in ***Burger King Corporation v. Rudzewiez***, 471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1995)

> Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities at *residents of the forum*, and the litigation results from alleged injuries that "arise out of or relate to" those activities.[44]

***Burger King Corp.***, 471 U.S. at 472 (internal citations omitted) (emphasis added). Today's case involves Nordness "purposefully directing her activities at residents of the Mississippi, and this litigation results from alleged injuries that arise out of or relate to those activities." Nordness acknowledged, in her Memorandum of Law in Support of Defendant's Motion to

---

[44] *See **Knight***, holding that the nonresident defendant must have " . . . purposefully directed his activities at *residents* of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." ***Knight***, 50 So. 3d at 999.

22

Dismiss, that the test for minimum-contacts requirements for specific jurisdiction is as follows:

> [w]here a forum seeks to assert specific jurisdiction over [a nonresident] defendant who has not consented to suit there . . . the defendant [must have] "purposefully directed" [her] activities at *residents of the forum*, and the *litigation results from alleged injuries that "arise out of or relate to" those activities*.

(Nordness's Memorandum of Law in Support of Defendant's Motion to Dismiss at 7) (quoting ***Estate of Jones v. Phillips ex rel. Phillips***, 992 So. 2d 1131, 1140-41 (Miss. 2008) (emphasis added).

¶55.    "The 'minimum contacts' inquiry is fact intensive and no one element is decisive." ***Miller***, 155 So. 3d at 191 (citation omitted). "Purposeful availment" seeks to protect defendants from being subjected to lawsuits in jurisdictions where their contact was "random," "fortuitous," or "attenuated." ***Burger King Corp.***, 471 U.S. at 475, (citing ***Keeton***, 465 U.S. at 774, 104 S. Ct. at 1478; ***World-Wide Volkswagen Corp. v. Woodson***, 444 U.S. 286, 299, 100 S. Ct. 559, 568, 62 L. Ed. 2d 490 (1980)).  Nordness has offered no argument that her contacts with Phillip were "random," "fortuitous," or "attenuated." Her contacts were purposeful and intended, not accidental or by chance, whether she knew the contacts were made with a Mississippi resident or not. As the trial court stated in his August 13, 2013, Order, Nordness had:

> contacts with the Plaintiff's former husband – *which include a countless number of texts, phone calls and emails over a period of approximately six years – [which] were directed at a Mississippi resident while he was present in the State of Mississippi. . . .* While the Defendant may not have been aware that the Plaintiff's former husband and his wife resided in Mississippi during the six-year affair, this Court is not convinced that such ignorance can relieve

23

the Defendant from facing the consequences of her contact *with Mississippi [residents]* in a *Mississippi* court.

(Emphasis added and in original).

¶56. Last century, in ***Shaffer v. Heitner***, 433 U.S. 186, 97 S. Ct. 2569, 53 L. Ed. 2d 683 (1977), the United States Supreme Court recognized the changes brought about by the automobile. The ***Shaffer*** Court addressed out-of-state motorists driving on state highways "by using those highways [had] appointed a designated state official as his agent to accept process." ***Shaffer***, 433 U.S. 186, 202. Are we to conclude that all out-of-state motorists who travel within our borders know that their presence on our state's roads and highways subjects them to the jurisdiction of Mississippi courts? Such lack of knowledge does not defeat the state's power of jurisdiction over those motorists. *See* Miss. Code Ann. § 13-3-63 (Rev. 2012). Before today, knowledge, or lack thereof, has not been a standalone decisive element of a personal-jurisdiction inquiry. The Court also discussed the necessity of considering advancements in society, noting the need for "moderation of the territorial limits on jurisdictional power" since the invention of automobiles, thus increasing "the incidence of individuals causing injury in States where they were not subject to in personam actions . . ." under previous caselaw. ***Shaffer***, 433 U.S. at 202.

¶57. Just as the ***Shaffer*** Court recognized the changes brought about by the automobile, the District Court for the Northern District of Mississippi recognized changes and effects of newer technology:

> The modernization of communications systems is not limited to commercial life. As a practical matter, almost all personal telecommunications are also made via mail and wire communications. "A letter or a telephone call may, in

24

a given situation, be as indicative of substantial involvement with the forum state as a personal visit by the defendant."

*Bailey*, 2012 WL 569020, at *6 (citation omitted).

¶58. Paige had the burden of establishing a Mississippi court's power to entertain this action. This was accomplished through the long-arm statute. Paige presented evidence of purposeful contacts. Once accomplished, the burden shifted to Nordness to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. *Burger King Corp.*, 471 U.S. at 477 (emphasis added). This burden shifting is explained by one of our federal district courts:

> an individual who purposefully directs his activities to *forum state residents* and derives benefits therefrom should be answerable in the forum for the consequences of his activities; "the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed."

*Bailey*, 2012 WL 569020, at *5 (citation omitted) (emphasis added). Nor should Nordness be able to use a due process claim to shield herself from legal obligations that she voluntarily assumed.

¶59. What was the relationship between Nordness, the state of Mississippi, and Paige's cause of action for alienation of affections? Paige asserts Nordness engaged in specific acts of communication to facilitate and perpetuate the affair which caused or contributed to her loss of Phillip's affections and her emotional distress, which is the gravamen of her claim. Specific-contact activities and communications to and from Mississippi and the resulting trysts planned during these communications all are part and parcel of the present litigation.

25

¶60. Today's case presents a claim of injury which arose out of and is related to communications through cell phone calls, text messages, and emails. Considering the contacts have been admitted, Paige has a right to seek redress for damages related to those contacts. The United States Supreme Court has made it abundantly clear that "[t]hese contacts between [Nordness] and the residents of this state are important and sufficiently related to the underlying cause of action to foreclose any concern that the constitutional limits of the Due Process Clause are being violated." *Keeton*, 465 U.S. at 781 (Brennan, J., concurring).

¶61. The trial court held that Paige met her burden in establishing minimum contacts existed between Nordness and Phillip (a fact conceded by Nordness). The trial court's holding, Nordness's own admissions, and this Court's prior decisions all direct us to consider the final prong–fair play and substantial justice, which the majority posits is unnecessary. As set forth in *Knight*, this final analysis includes: "(1) the forum state's interest in adjudicating the dispute; (2) the plaintiff's interests in obtaining convenient and effective relief; (3) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (4) the shared interest of the several states in furthering fundamental social policies." *Knight*, 50 So. 3d at 1000. Today's decision does not resolve the controversy. It eliminates the controversy.

¶62. Mississippi has a strong interest in adjudicating the dispute, as some communications promoting the affair occurred while Phillip, a Mississippi resident, was in Mississippi,

26

resulting in an alleged injury in Mississippi, to a Mississippi marriage which was dissolved in Mississippi.

> A state has an especial interest in exercising judicial jurisdiction over those who commit torts within its territory. This is because torts involve wrongful conduct which a state seeks to deter, and against which it attempts to afford protection, by providing that a tortfeasor shall be liable for damages which are the proximate result of his tort.

*Miller*, 155 So. 3d at 193 (citing *Restatement (Second) of Conflict of Laws* § 36(1) cmt. c (1971)).

¶63.   Mississippi undoubtably has a strong interest in the marriage, as the marriage was recognized by and protected by its laws. Further, Mississippi has a strong interest in a marriage that allegedly was injured in the state, bringing forth claims for alienation of affections, and in the eventual demise of a marriage that ended in Mississippi under Mississippi's laws of divorce. Further, *Miller* recognized an important state interest. Mississippi chose to enact this state's long-arm statute to provide its own residents redress against out-of-state defendants who commit torts within the state, evincing a compelling state interest in adjudicating suits where its state's residents allege an injury in Mississippi. *Miller*, 155 So. 3d at 193; *see also* ***Thomas***, 876 F. Supp. 2d at 793 (Claims for alienation of affections "accrue[] when 'the alienation or loss of affection is finally accomplished.'") (citation omitted).

¶64.   Mississippi also will provide the most convenient and effective relief. The record reveals that Nordness lived in Louisiana and North Carolina during the affair and currently resides in Tennessee. Of these states, only North Carolina recognizes the tort of alienation

27

of affections. *See* N.C.G.S.A. § 52-13 (effective 2009). However, an exercise of personal jurisdiction in North Carolina offers no convenience, considering Nordness no longer resides there and the resulting injury did not occur there. Further, the applicable statute of limitations is three years from the "last act of the defendant giving rise to the cause of action." *Miller*, 155 So. 3d at 193. As seen in *Miller*, Paige ". . . lacks a viable alternative to adjudicate [the] claim . . . increas[ing] Mississippi's interest in adjudicating this claim." *Id.* at 194. Further, because the alleged resulting injury occurred in Mississippi to Paige and her marital relationship with Phillip, witnesses and evidence likely will be found in Mississippi.

¶65.    Moreover, Nordness's current residence in the neighboring state of Tennessee would not cause an extreme burden to her because the suit is maintained in Mississippi. *See Knight*, 50 So. 3d at 1001 ("Knight is a resident of Louisiana, and maintenance of the suit in Mississippi will not create an extreme burden on him."); *Miller*, 155 So. 3d at 194 ("[I]t will be convenient for Miller to have this claim in Mississippi, as it is close to her resident state of Tennessee."); *Bailey*, 2012 WL 569020, at *8 ("The court recognizes the burden placed on the defendant, an Ohio resident, as a result of this case being tried in Mississippi. However, the defendant's burdens do not present the type of compelling reasons necessary to justify a finding that the exercise of jurisdiction over the defendant is contrary to notions of fair play and substantial justice."); *Thomas*, 876 F. Supp. 2d at 798 ("Defendant's generalized difficulty in traveling to Mississippi is not a burden violative of due process."). This Court is not presented with any facts which would show that requiring Nordness to be subjected to jurisdiction in Mississippi would ". . . hamper the interstate judicial system's

28

interest in obtaining the most efficient resolution to the controversy."*Miller*, 155 So. 3d at 194. "Once the plaintiff makes her prima facie showing, . . . it becomes the defendant's burden to convince the court that requiring him or her to defend in the particular forum would create a substantial hardship." *Bailey*, 2012 WL 569020, at *3. As we have seen in *Knight*, *Miller*, *Bailey*, and *Thomas*, requiring a defendant to travel to Mississippi does not present this Court with a compelling reason to find that such travel would create a substantial hardship, thus violating due process requirements.

¶66.    Finally, the states have a shared interest in providing relief for individuals who have experienced alienation of affections by advancing a "fundamental social policy[,]" which guards the "foundation of a marriage," *i.e.*, "love, society, [and] companionship."*Fitch v. Valentine*, 959 So. 2d 1012, 1019 (Miss. 2007). Further, "[t]he states have a shared interest in having their state laws enforced. *Thomas*, 876 F. Supp. 2d at 797-98 (citing *Bailey*, 2012 WL 569020, at *8).

¶67.    *Thomas* relied on the following reasoning provided in *Bailey*:

> Mississippi has a strong interest in this litigation in light of its interest in providing for an effective means of redress for its citizens. Mississippi also has an interest in protecting its laws, as it has refused to abolish the tort of alienation of affections . . . . The plaintiff also has a strong interest in adjudicating the dispute in Mississippi. Here, the claim of the plaintiff can be resolved conveniently, whether for or against her, whereas this cause of action may not exist in other jurisdictions. The states have a shared interest in having their state laws enforced.

*Thomas*, 876 F. Supp. 2d at 797-98 (citing *Bailey*, 2012 WL 569020, at *8). As in *Knight*, *Miller*, *Thomas,* and *Bailey*, this Court is not presented with sufficient "compelling reasons" to deny the exercise of personal jurisdiction over Nordness. The exercise of personal

jurisdiction over Nordness is not contrary to notions of fair play and substantial justice, for the State of Mississippi has a paramount interest in the viability of the cause of action of alienation of affections to provide redress for its citizens when the protections of the martial relationship have been compromised. *Knight*, 50 So. 3d at 1000-1001; *Miller*, 155 So. 3d at 193-94; *Thomas*, 876 F. Supp. 2d at 798; *Bailey*, 2012 WL 569020, at *8.

¶68. Therefore, *in personam* jurisdiction properly can be exercised over Nordness in Mississippi, as this state's long-arm statute is applicable, sufficient minimum contacts exist for specific jurisdiction, and maintenance of the suit, although inconvenient for Nordness, does not offend traditional notions of fair play and substantial justice. Nordness failed to sustain her burden of showing otherwise.

¶69. This Court should affirm the trial court's denial of the motion to dismiss and affirm the judgment of the trial court, which held that personal jurisdiction over a defendant who committed a tort, in whole or in part, in Mississippi, was proper.

**PIERCE, J., JOINS THIS OPINION.**